

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00455-CR

JEFF ALAN ROLLINS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 249th District Court
Johnson County, Texas
Trial Court No. F44686

## MEMORANDUM  OPINION

In three issues, appellant, Jeff Alan Rollins, challenges his conviction for driving while intoxicated ("DWI"), third offense, with punishment enhanced to a second-degree felony.  *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2) (West Supp. 2011); *see also id.* § 12.42(a) (West Supp. 2011).  We affirm.

### I.    BACKGROUND

Rollins's conviction in this case stems from the same events that resulted in the revocation of his probation from a separate conviction in appellate cause number 10-11-

00098-CR. *See Rollins v. State*, No. 10-11-00098-CR, 2011 Tex. App. LEXIS 8974, at **6-10 (Tex. App.—Waco Nov. 9, 2011, no pet.) (mem. op., not designated for publication). As such, we need not detail all of the facts that led to appellant's arrest for DWI. *See* TEX. R. APP. P. 47.1.

Rollins was arrested for DWI after crashing his motorcycle near the driveway of a residence at 816 Forgotten Road, which is located between Burleson and Alvarado, Texas. After seeing that Rollins had crashed his motorcycle, the owner of the residence, Cal Renick, came out to assist. *See Rollins*, 2011 Tex. App. LEXIS 8974, at *7. As stated in our previous opinion,

> Renick noticed that Rollins "was in bad shape." Rollins had lacerations all over his body and a fractured leg. Renick recounted that Rollins was drifting in and out of consciousness and that Rollins had urinated on himself. Renick smelled a strong odor of alcohol on Rollins's breath and concluded that Rollins was intoxicated. Renick provided blankets and towels to combat the bleeding . . . .
>
> Shortly thereafter, Wesley Williams, a paramedic for CareFlite, arrived. Williams noticed that Rollins "had no helmet. He had a severely broken leg; had some injuries to his face, his left eye, [and] a lot of lacerations . . . ." Williams testified that a lot of people were present at the scene of the accident and that many of them were talking about alcohol. Like Renick, Williams also detected a strong odor of alcohol on Rollins's breath. Williams then asked Rollins how much alcohol he had consumed, and Rollins responded, "a lot." Rollins was then transported to Harris Methodist Hospital in Fort Worth, Texas, for treatment.
>
> Richard Zaborowski, a trooper with the Texas Department of Public Safety, testified that he also responded to the 911 call. When he arrived, Trooper Zaborowski observed medical personnel treating Rollins. As he stood near Rollins, Trooper Zaborowski also "could smell the odor of an alcoholic beverage emitting from his [Rollins's] person." Trooper Zaborowski recalled that Rollins had soiled his pants . . . and that Rollins's speech was slurred. Based on his investigation, Trooper Zaborowski

concluded that, at the time of the accident, Rollins was "intoxicated due to the introduction of alcohol."

*Id.* at **7-9.

Trooper Zaborowski testified that he spoke with Rollins while Rollins was being attended to at the hospital. After asking Rollins about the accident, Trooper Zaborowski suspected that Rollins had committed the offense of DWI and subsequently read him his DIC 24 Statutory Warning. Trooper Zaborowski then requested a blood sample from Rollins, which Rollins verbally refused. However, a sample of Rollins's blood was ordered by emergency-room doctor Herschel L. Brown for the purpose of medical treatment. Dr. Brown explained that he usually orders a blood test after he sees a patient. The sample was drawn by paramedic intern John Morrison under the supervision of Alberto Saucedo, R.N. and was sent to the hospital's lab for analysis. The lab results revealed that Rollins had a blood-alcohol level of 197 milligrams per deciliter. Dr. Brown stated that a person is intoxicated at a blood-alcohol level of 100 milligrams per deciliter.

Thereafter, Rollins was discharged from the hospital and later met with Brandy Nelson, his probation officer. Nelson testified that, at a July 2010 office visit, Rollins signed "an admission for drinking alcohol on the day of the accident." *Id.* at *9. As a result of Rollins's admission, the State moved to revoke Rollins's probation. After a

hearing, Rollins's probation was revoked, and he was sentenced to ten years' incarceration in the Institutional Division of the Texas Department of Criminal Justice.[1]

Rollins was subsequently indicted for felony driving while intoxicated, third offense, with respect to the accident. The indictment contained two DWI enhancement paragraphs alleging that Rollins had been previously convicted of DWI on December 16, 2002 in Johnson County, Texas, and October 10, 2001 in Wichita County, Texas. The indictment also contained a felony-enhancement paragraph asserting that Rollins had been previously convicted of felony possession of a controlled substance, cocaine, on March 10, 2000.

Trial in this matter began on November 9, 2011. Rollins pleaded "not guilty" to the charged offense and "not true" to the enhancement paragraphs contained in the indictment. After hearing all of the evidence, the jury found Rollins guilty of the charged offense, found the felony-enhancement paragraph to be true, and sentenced him to seventeen years' confinement in the Institutional Division of the Texas Department of Criminal Justice with no fine. Rollins's sentence in this case was ordered to run concurrently with his sentence in the December 16, 2002 case.

## II. SUFFICIENCY OF THE EVIDENCE REGARDING PRIOR CONVICTIONS

In his first issue, appellant contends that the State did not proffer sufficient evidence to support his conviction. Specifically, appellant argues that the State did not

---

[1] Rollins's probation revocation pertained to a guilty plea he entered on December 16, 2002 for felony driving while intoxicated, third offense, in Johnson County. *See Rollins v. State*, No. 10-11-00098-CR, 2011 Tex. App. LEXIS 8974, at *1 (Tex. App.—Waco Nov. 9, 2011, no pet.) (mem. op., not designated for publication) (citing TEX. PENAL CODE ANN. § 49.04 (West 2011)).

tender properly-authenticated records demonstrating that he has two prior convictions for DWI.

## A.     Applicable Law

To prove that a defendant has been convicted of a prior offense, the Texas Court of Criminal Appeals has recently stated the following:

> To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. No specific document or mode of proof is required to prove these two elements. There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document. While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of ways, including (1) the defendant's [a]dmission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. Just as there is more than one way to skin a cat, there is more than one way to prove a prior conviction.
>
> Texas substantive law does not require that the fact of a prior conviction be proven in any specific manner. Article 37.07 of the Code of Criminal Procedure permits proof of a defendant's "prior criminal record," but it does not require the production of a certified judgment to prove that prior criminal record. Any type of evidence, documentary or testimonial, might suffice. Similarly, Chapter 12 of the Penal Code deals with enhanced penalties for repeat or habitual offenders, but it does not require that the fact of a prior conviction be established in any particular manner or with any specific document.

*Flowers v. State*, 220 S.W.3d 919, 921-22 (Tex. Crim. App. 2007) (internal footnotes omitted). The *Flowers* court also referenced the San Antonio Court of Appeals' decision in *Blanks v. State* regarding the many ways that the State can prove a prior conviction:

"A prior conviction may be proven by certified copies of a judgment and sentence and authenticated copies of records from the Texas Department of Corrections or other correctional institution, including fingerprints, supported by expert testimony matching them to the defendant. However, this is not the only method by which the State may prove a prior conviction. The State may also offer: (1) testimony from a witness who personally knows the defendant and the fact of his prior conviction; (2) the defendant's stipulations or judicial admissions; or (3) the defendant's photograph in a penitentiary packet or other official record."

*Id.* at 924 (quoting *Blanks v. State*, 172 S.W.3d 673, 675 (Tex. App.—San Antonio 2005, no pet.)).

In general, "the proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle." *Id.* at 923. "The pieces standing alone usually have little meaning." *Id.* "However, when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or convictions." *Id.* The trier of fact is required to fit the pieces of the jigsaw puzzle together and weigh the credibility of each piece. *Id.* "Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle." *Id.* If the existence of the conviction and its link to the defendant can be found beyond a reasonable doubt, "then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Id.* Since this is a legal-sufficiency review, we consider all the evidence in the light most favorable to the trier of fact's finding. *Prihoda v. State*, 352 S.W.3d 796, 805 (Tex. App.—

San Antonio 2011, pet. ref'd) (citing *Isassi v. State*, 330 S.W.3d 633, 639 (Tex. Crim. App. 2010); *Littles v. State*, 726 S.W.2d 26, 30 (Tex. Crim. App. 1984)).

Section 49.09(b)(2) of the Texas Penal Code provides that "[a]n offense under Section 49.04, 49.05, 49.06, or 49.065 is a felony of the third degree if it is shown on the trial of the offense that the person has previously been convicted . . . two times of any other offense relating to the operating of a motor vehicle while intoxicated . . . ." TEX. PENAL CODE ANN. § 49.02(b)(2). Further, section 49.04 of the Texas Penal Code states that a person commits the offense of DWI if he is intoxicated while operating a motor vehicle in a public place. *Id.* § 49.04(a) (West Supp. 2011). And finally, section 12.42(a) of the Texas Penal Code provides that "if it is shown on the trial of a felony of the third degree that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under Section 12.35(a), on conviction the defendant shall be punished for a felony of the second degree." *Id.* § 12.42(a) (West Supp. 2011). Here, Rollins was charged under section 49.09(b) and was punished in accordance with the punishment range for second degree felonies; thus, sections 12.42(a), 49.04(a), and 49.09(b) are relevant in this issue.

B.    Discussion

At the outset, we note that Rollins does not challenge the finding on the felony-enhancement paragraph pertaining to his prior conviction for unlawful possession of cocaine, which elevated the punishment from a third-degree to a second-degree felony. *See id.* §§ 12.42(a), 49.04(a), 49.09(b). Instead, Rollins focuses his appellate issue on the DWI paragraphs contained in the indictment.

At trial, the State introduced into evidence a certified copy of the indictment, guilty plea memorandum, and original judgment in trial court cause number F35919, which corresponded with Rollins's felony DWI conviction on December 16, 2002 in Johnson County. The State's fingerprint expert, Michael Gaudet, a lieutenant with the Johnson County Sheriff's Office, testified that, on the first morning of the trial, he obtained fingerprints from Rollins. He was then asked to compare the fingerprints taken from Rollins on the first morning of trial to fingerprints taken in trial court cause number F35919. After reviewing the two sets of fingerprints, Lieutenant Gaudet confirmed that the fingerprints in trial court cause number F35919 were indeed Rollins's.

Additionally, the indictment in trial court cause number F35919 referenced—in "DWI Enhancement Paragraph One"—a felony DWI conviction in trial court cause number 07-3676-9064-E on October 10, 2001 in Wichita County, which is the same conviction that the State referenced in the second DWI enhancement paragraph in the indictment in this matter. The State introduced a certified copy of the judgment in trial court cause number 07-3676-9064-E. However, the fingerprints in this judgment are of poor quality, and as result, Lieutenant Gaudet was unable to make a comparison with Rollins's known fingerprints. In addition, a photograph was not attached to the judgment in trial court cause number 07-3676-9064-E. However, the State successfully argued to the trial court that the judgment in trial court cause number 07-3676-9064-E referred to Rollins based on Rollins's guilty plea in trial court cause number F35919, wherein he pleaded "true" to the DWI enhancement paragraphs—one of which

referenced trial court cause number 07-3676-9064-E—as part of a plea bargain with the State.

On appeal, Rollins's first issue focuses on the judgment in trial court cause number 07-3676-9064-E. Specifically, Rollins argues that the State failed to sufficiently establish a link between him and the prior DWI conviction because: (1) the fingerprints on the certified copy of the judgment were of such a poor quality that Lieutenant Gaudet could not match them to fingerprints taken on the first morning of trial; (2) there was no photograph attached to the judgment for comparison purposes; and (3) the guilty plea memorandum in trial court cause number F35919 is a pre-printed form, which is insufficient to establish the necessary link between Rollins and the Wichita County DWI conviction.

However, in viewing the totality of the evidence in the light most favorable to the trial court's finding, we conclude that the State sufficiently linked Rollins to the felony DWI conviction in trial court cause number 07-3676-9064-E. Our conclusion is premised on several things. First, in trial court cause number F35919, Rollins pleaded "true" to the enhancement paragraphs contained in the indictment—one of which referenced the felony DWI conviction in trial court cause number 07-3676-9064-E. Second, the name listed on the judgment in trial court cause number 07-3676-9064-E is Jeff Alan Rollins, which is the same name and spelling as the appellant in this case. And, as the Court of Criminal Appeals has stated, "[t]he pieces standing alone usually have little meaning. . . . However, when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or

convictions." *Flowers*, 220 S.W.3d at 974. Despite the fact that Lieutenant Gaudet could not compare the fingerprints in trial court cause number 07-3676-9064-E to the fingerprints taken on the first morning of trial, we believe that, based on the foregoing evidence, a reasonable factfinder could conclude that Rollins was previously convicted of felony DWI in trial court cause number 07-3676-9064-E.

Furthermore, we do not believe that the State's use of a pre-printed form—the plea-bargain memorandum in trial court cause number F35919—somehow renders Rollins's plea of "true" in trial court cause number F35919 meaningless or eliminates any linkage between Rollins and the felony DWI conviction in trial court cause number 07-3676-9064-E. Specifically, in trial court cause number F35919, Rollins admitted that he had "read the charging instrument against me in this case and understand everything it contains; that I committed each and every element alleged therein; and that I am guilty of all offenses charged therein and all lesser included offenses . . . ." Moreover, included in the plea-bargain paperwork that Rollins signed is the following acknowledgement: "[B]oth sides will waive jury trial in this case, the Defendant [Rollins] will enter his plea of GUILTY and True to Enhancement Paragraph(s) 1, 2 before the Court . . . ."

Also, we find Rollins's reliance on *Dinnery v. State* to be misplaced. *See* 592 S.W.2d 343, 349-52 (Tex. Crim. App. 1979) (op on reh'g) (noting that a written confession in the guilty-plea printed forms was insufficient to support the guilty plea because the confession—for entry into a habitation with intent to commit theft—did not correspond with the allegations contained in the indictment—burglary of a habitation

by entering and thereafter committing theft). The *Dinnery* Court did not specifically hold that pre-printed forms are insufficient to prove a prior conviction. *See generally id.* Accordingly, based on the foregoing, we overrule Rollins's first issue.

### III. LESSER-INCLUDED-OFFENSE INSTRUCTION

In his second issue, Rollins argues that the trial court erred in refusing to include an instruction in the jury charge with respect to the lesser-included offense of DWI, a second offense. Essentially, Rollins's second issue hinges upon a finding that there is insufficient evidence to link Rollins to the DWI conviction in trial court cause number 07-3676-9064-E.

### A. Applicable Law

The determination of whether a lesser-included-offense instruction requested by a defendant must be given requires a two-step analysis. *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). The first step asks whether the lesser-included offense is included within the proof necessary to establish the offense charged. *McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim. App. 2010). We must compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser offense. *See Ex parte Amador*, 326 S.W.3d 202, 206 n.5 (Tex. Crim. App. 2010); *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007); *see also* TEX CODE CRIM. PROC. ANN. art. 37.09 (West 2006). This step is a question of law. *Hall*, 225 S.W.3d at 535.

The second step of the lesser-included-offense analysis is to determine if there is some evidence from which a rational jury could acquit the defendant of the greater

offense while convicting him of the lesser-included offense. *Guzman v. State*, 188 S.W.3d 185, 188-89 (Tex. Crim. App. 2006). The evidence must establish the lesser-included offense as "a valid rational alternative to the charged offense." *Segundo v. State*, 270 S.W.3d 79, 90-91 (Tex. Crim. App. 2008). We review all of the evidence presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478-79 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 673.

**B.     Discussion**

Assuming without deciding that Rollins met the first prong in the lesser-included-offense analysis, we focus our analysis on the second prong. Here, the record contains certified copies of Rollins's two prior felony DWI convictions—one in Johnson County and the other in Wichita County. Therefore, the indictment in this case accurately reflected that Rollins was charged with a third, not a second, felony DWI offense. Moreover, Rollins admits that he did not present any evidence to rebut the State's allegation about either prior felony DWI conviction, and the record shows that Rollins did not present any evidence demonstrating that he is only guilty of felony DWI, a second offense. Furthermore, we are not persuaded by Rollins's argument that he was entitled to an instruction on lesser-included offenses because the State's evidence regarding his two prior felony DWI convictions was allegedly weak. *See Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994); *see also Stallworth v. State*, No. 07-10-00137-CR, 2012 Tex. App. LEXIS 1538, at *3 (Tex. App.—Amarillo Feb. 28, 2012, pet. ref'd) (mem. op., not designated for publication) ("However, it is not enough that the evidence supporting the greater charged offense is weak, the evidence supporting

the greater charge is discredited or weakened during cross-examination, or the jury disbelieves crucial evidence pertaining to the greater offense. There must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted.") (internal citations and quotations omitted).

Accordingly, we do not believe that, based on the evidence presented, a rational juror could find that if Rollins was guilty, he was only guilty of felony DWI, a second offense. *See Segundo*, 270 S.W.3d at 90-91; *Guzman*, 188 S.W.3d at 188-89. Thus, we cannot say that Rollins has satisfied the second prong of the lesser-included-offense analysis. *See Segundo*, 270 S.W.3d at 90-91; *Guzman*, 188 S.W.3d at 188-89; *see also Hall*, 225 S.W.3d at 536; *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003). As such, we cannot conclude that the trial court abused its discretion in failing to include a lesser-included-offense instruction in the jury charge. *See Jackson v. State*, 160 S.W.3d 568, 574 (Tex. Crim. App. 2005) (stating that we review a trial court's decision not to submit a lesser-included-offense instruction for abuse of discretion); *see also Stallworth*, 2012 Tex. App. LEXIS 1538, at *2 (same). We overrule Rollins's second issue.

## IV. APPELLANT'S BLOOD-TEST RESULTS

In his third issue, Rollins contends that his conviction must be reversed because his blood-test results were obtained illegally and, thus, were inadmissible at trial. In particular, Rollins argues that evidence of the blood draw should have been excluded because the blood draw was done at the direction of Trooper Zaborowski, even though

Rollins had refused to consent to the blood draw, and because the blood draw was conducted by an unqualified person.

## A. Applicable Law

"An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard." *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). "The trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement." *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## B. Discussion

In support of his first argument that the blood draw was done at the direction of Trooper Zaborowski, Rollins directs us to State's Exhibit 12, which includes notes made regarding the blood draw. In one note, Nurse Saucedo stated the following: "Paramedic student [Morrison] prepped left hand of patient [Rollins] with betadine and drew blood sample under the direction and supervision of Trooper Richard Zaborowski of the Texas [H]ighway [P]atrol. Per Officer[,] blood draw mandatory for felony DWI. Pt. rights read and explained by Officer to patient." After referencing this note in his brief, Rollins asserts that: "This is a clear violation of Appellant's right to refuse to submit to the taking of a specimen designated by a peace officer under Texas

Transportation Code Section 724.013."[2]  The State responds by arguing that Rollins did not preserve his first argument for appellate review and that the blood draw was conducted for purposes of medical diagnosis; thus, the Transportation Code is inapplicable to this issue.

A review of the reporter's record shows that Rollins objected to the admission of the results from the blood draw based on his assertion that the blood draw was not conducted by a person qualified under the Transportation Code.  Rollins did not object in the trial court that the blood draw violated section 724.013 because it was allegedly taken at the direction of Trooper Zaborowski.  The Texas Court of Criminal Appeals has held that a "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Thomas v. State*, 723 S.W.2d

---

[2] Section 724.013 of the Texas Transportation Code provides that:  "Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer."  TEX. TRANSP. CODE ANN. § 724.013 (West 2011).  Section 724.012(b), on the other hand, states that:

> (b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle . . . and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
>
> . . . .
>
> (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:
>
> . . . .
>
>> (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, 49.065, Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections.

*Id.* § 724.012(b)(3)(B) (West 2011).

696, 700 (Tex. Crim. App. 1986) ("In addition, if an objection made in the trial court differs from the complaint made on appeal, a defendant has not preserved any error for review."); *see also Blount v. State*, No. 10-10-00198-CR, 2012 Tex. App. LEXIS 4534, at *8 (Tex. App.—Waco June 6, 2012, no pet.) (mem. op., not designated for publication). Because Rollins's complaint on appeal does not comport with his objection in the trial court, we conclude that this argument has not been preserved for appellate review.

Nevertheless, even if Rollins had preserved this argument for appellate review, the State directs us to the testimony of Dr. Brown, who stated that he ordered the blood draw for medical diagnosis. This testimony contradicts the notes of Nurse Saucedo and undermines Rollins's argument that the blood draw was done at the direction of Trooper Zaborowski. And, we also note that any conflicts in the evidence are resolved by the factfinder, to which we must defer. *See Isassi*, 330 S.W.3d at 638 (stating that appellate courts defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (noting that, when the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination).

With regard to Rollins's second complaint, the record contains a "Universal Consent for Treatment" form, wherein Rollins verbally consented to "authorize testing, treatment and hospital care by Hospital nurses, employees and others as ordered by my doctor and his/her consultants, associates and assistants, or as directed pursuant to standing medical orders or protocols." The evidence demonstrates that Morrison

conducted the blood draw as an intern under the supervision of Nurse Saucedo and at the direction of Dr. Brown. And, as noted earlier, Dr. Brown testified that he ordered the blood draw for medical diagnosis. Thus, the blood draw appears to fall within the purview of the "Universal Consent for Treatment" to which Rollins consented. *See Bennett v. State*, 723 S.W.2d 359, 361 (Tex. App.—Fort Worth 1987, no pet.) (concluding that, whether the defendant was under arrest when the blood sample was taken is immaterial because there was no need to compel the defendant's submission to the test because the defendant consented to giving a blood sample); *see also King v. State*, No. 05-10-00610-CR, 2012 Tex. App. LEXIS 1133, at **9-10 (Tex. App.—Dallas Feb. 10, 2012, no pet.) (mem. op., not designated for publication) (stating that Chapter 724 of the Texas Transportation Code does not apply when a person consents to having his blood drawn) (citing *State v. Neesley*, 239 S.W.3d 780, 786 (Tex. Crim. App. 2007); *Subirias v. State*, 278 S.W.3d 406, 408 (Tex. App.—San Antonio 2008, pet. ref'd)). Rollins does not argue that his verbal consent to treatment was done unknowingly, unintelligently, or involuntarily.

In addition, Rollins acknowledges in his appellant's brief "that the Transportation Code does not apply to a case where such a specimen is take[n] purely for medical diagnosis or medical treatment and Appellant's doctor did order a blood sample." *See Goodman v. State*, 302 S.W.3d 462, 470 (Tex. App.—Texarkana 2009, pet. ref'd) (affirming the trial court's admission of the results of a blood draw into evidence because "the trial court could reasonably find both that the blood was not drawn at the request of law enforcement and that it was tested for medical purposes," among other

things); *see also Desilets v. State*, No. 09-09-00375, 2010 Tex. App. LEXIS 8097, at **9-11 (Tex. App.—Beaumont Oct. 6, 2010, no pet.) (mem. op., not designated for publication) (same); *Bohrer v. State*, No. 13-06-356-CR, 2007 Tex. App. LEXIS 5358, at *2 (Tex. App.—Corpus Christi July 5, 2007, no pet.) (mem. op., not designated for publication) ("The limitations on medical personnel who may take [blood] samples apply only when the samples are taken at the request or order of a peace officer. These limitations do not apply when the tests are conducted by medical personnel solely for medical purposes." (internal quotations omitted)) (citing TEX. TRANSP. CODE ANN. § 724.017(a); *State v. Hardy*, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997)).

Therefore, based on the foregoing, we cannot say that the trial court abused its discretion in admitting the results of Rollins's blood draw into evidence. *See McCarty*, 257 S.W.3d at 239; *see also Shuffield*, 189 S.W.3d at 793. Accordingly, we overrule his third issue.

## V.    CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed August 30, 2012
Do not publish
[CR25]